IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Quintin M. Littlejohn, ) | |
| ) | Civil Action No. 6:06-3389-RBH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **AMENDED** |
| Cherokee County Detention Center; ) | **REPORT OF MAGISTRATE JUDGE** |
| Harold Crocker, Director; NFN Polk, ) | |
| Correctional Officer; NFN Murphy, ) | |
| Correctional Officer; NFN Padgett, ) | |
| Correctional Officer; NFN Thomas, ) | |
| Correctional Officer; NFN Todd, ) | |
| Correctional Officer, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on a motion for summary judgment filed by the plaintiff and one filed by the defendants. The plaintiff seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

In his complaint, the plaintiff, a former pretrial detainee at the Cherokee County Detention Center ("CCDC") proceeding *pro se,* alleges that while he was incarcerated at the CCDC, he was subjected to overcrowding, cold food, insufficient recreational opportunities, deprivation of access to courts, procedural violations as a result of his assignment to the maximum security unit, and lack of a medical report. The plaintiff has also attempted to bring claims on behalf of a fellow inmate, Edward Hartwell, who he alleged was yelled at by

defendant Padgett. The plaintiff claims that the defendants' actions violated his constitutional rights.

The defendants filed their motion for summary judgment on March 26, 2007. By order filed March 27, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 30, 2007, the plaintiff filed a response to the motion. On June 28, 2007, the plaintiff filed a motion for injunctive relief, and on July 12, 2007, he filed a motion for summary judgment in which he partially restated his initial allegations.

## **FACTS PRESENTED**

On October 23, 2006, the plaintiff was sent to CCDC as a pretrial detainee on charges of possession of crack cocaine. The plaintiff filed this action on December 7, 2006.[1] On January 23, 2007, the plaintiff was released on bond. After his release, he returned to CCDC on February 27, 2007, upon commitment order from the Probate Court pending his transfer to Patrick B. Harris Mental Hospital ("PBH"). On March 1, 2007, the plaintiff was transferred to PBH. As of June 2007, the plaintiff had been transferred back to CCDC.

In the body of the plaintiff's complaint, he references defendants Emery, Polk, Padgett, and Crocker. However, he does not reference defendants Todd and Thomas. The defendants he names are state officials and employees acting in their official capacities. Also, in his complaint, the plaintiff attempts to bring a claim on behalf of Edward Hartwell ("Hartwell"), a fellow inmate. The plaintiff has submitted three affidavits that are titled

---

[1] At the time this case was filed, it was not in proper form. On December 1, 2006, the court filed an order giving the plaintiff an opportunity to bring the case into proper form. On December 12, 2006, the plaintiff filed an amended complaint and several affidavits in an attempt to bring the case into proper form. However, the case was still not in proper form, and a second order was filed on December 14, 2006. The plaintiff brought the case into proper form on December 22, 2006.

2

"Affidavits to 'Class Action,' F.R.C.P. 23 *Nelson v. Leeke*" as an attempt to file a class action suit. Generally, the affidavits are focused on allegations of CCDC not providing the following: a law library, proper recreation, meaningful programs, and access to the outside world.

Based on the affidavits offered by the defendants, the plaintiff's behavior warranted them to take disciplinary actions. According to defendant Robin Murphy's affidavit, the plaintiff was put in the maximum security unit for masturbating in front of female officers (Murphy aff. ¶ 3). The affidavit further states that while the plaintiff was in maximum security, he attempted to grab an officer and pull her into the unit (*id*. ¶ 4). According to defendant Ryan Thomas, he had to pepper spray the plaintiff during intake when the plaintiff attempted to grab him (Thomas aff. ¶ 3). In addition, the plaintiff threw food at Thomas, so he had the plaintiff's meals changed to sandwich/bag lunches (*id*. ¶ 4). Thomas and Padgett recalled in their respective affidavits that the plaintiff threatened to sue them if they did not supply him with crack cocaine (*id*. ¶ 6; Padgett aff. ¶ 4). Defendant Padgett states that he supplied the plaintiff with a three-inch pencil when the plaintiff requested a writing instrument (Padgett aff. ¶ 5). He further states that CCDC's recreational facilities are consistent with other county detention centers (*id*. ¶ 6), and he has never denied the plaintiff access to the courts (*id*. ¶ 7).

According to defendant Harold Crocker ("Crocker"), the Administrator for CCDC, CCDC has a grievance procedure available for inmates whereby an inmate can obtain a written form in the event of a grievance and have his grievance ruled upon within seven days (Crocker aff. ¶ 5). If the inmate desires to appeal the ruling, he would do so through the jail administrator within 7 days of the decision (*id.*). CCDC's grievance procedure is confirmed by plaintiff's affidavit and exhibit (Littlejohn aff. ¶¶ 1-5; Ex. 1). In Littlejohn's affidavit, he complains about the grievance form, but does not state that he filed a grievance form with the CCDC (*id.*). In the plaintiff's Answers to Court's Special

3

Interrogatories ("plaintiff's answers"), the plaintiff asserts that there is a grievance procedure and that he filed a grievance regarding the claims he is alleging in this matter; however, he cannot provide a grievance number or a copy of any filed grievances (pl. answers ¶¶ C-E).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

4

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Administrative Remedies*

As noted above, the plaintiff has alleged numerous claims. The defendants contend that the plaintiff has failed to exhaust his administrative remedies as to his prison conditions claims. This court agrees. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court has observed:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an

> administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (citations and quotations omitted).

Here, there is no evidence in the record that the plaintiff exhausted his administrative remedies before filing a complaint. According to Crocker, the Administrator for CCDC, CCDC has a grievance procedure available for inmates whereby an inmate can obtain a written form in the event of a grievance and have his grievance ruled upon within seven days (Crocker aff. ¶ 5). If the inmate desires to appeal the ruling, he would do so through the jail administrator, Crocker, within seven days of the decision (*id.*). CCDC's grievance procedure is confirmed by plaintiff's affidavit and exhibit (Littlejohn aff. ¶ 1-5; Ex. 1). In Littlejohn's affidavit, he complains about the grievance form, but does not state that he filed a grievance form with the CCDC (*id.*). In the plaintiff's answers, he asserts that there is a grievance procedure and that he filed a grievance regarding the claims he is alleging in this matter; however, he cannot provide a grievance number or a copy of any filed grievances (pl. answers ¶ C-E). Because the plaintiff has not shown that he filed a grievance with the CCDC, this court finds that the plaintiff has failed to exhaust his administrative remedies as to his prison conditions claims, and his claims must be dismissed. Accordingly, the defendants' summary judgment should be granted.

### *Representing Another and/or a Class Action*

The defendants argue that the plaintiff's attempt to bring claims on behalf of other inmates should be barred. This court agrees. The Supreme Court has accepted the general rule that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The exception to the rule exists when the party asserting the right has a "close" relationship with the person who

possesses the right and a "hindrance" exists as to the possessor's ability to protect his own interests.  *Powers v. Ohio*, 499 U.S. 400, 411 (1991).  In *Oxendine v. Williams*, the court found that the request for an injunction against prison policies that affect all inmates placed the class action under Federal Rules of Civil Procedure ("FRCP") 23.  509 F.2d 1405, 1407 (4th Cir. 1975); *see* 7A Wright & Miller, Federal Practice and Procedure § 1775, at 19-22.  According to FRCP 23, a judgment against the plaintiff may prevent the other inmates from later raising the same claims; thus, if the plaintiff cannot "fairly and adequately protect the interest of the class," he may not represent it.  *See* 7 Wright & Miller, Federal Practice and Procedure § 1765, at 617-22.  As stated in *Oxendine*, the ability to protect the interests of the class depends in part on the quality of counsel, and the court considers the competence of a layman representing himself to be clearly too limited to allow him to risk the rights of others.  509 F.2d at 1407.  Furthermore, "it is plain error to permit a imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."  *Id.*

Here, the plaintiff does not have standing to bring a claim on behalf of Hartwell because he does not have a close relationship with Hartwell nor does he offer evidence of Hartwell possessing a "hindrance" that would prohibit him from bringing his own claim.  As for the class action claim, the plaintiff is a layman who is unassisted by counsel and lacks the competence level to proceed in a class action claim – as evidenced by the fact that the plaintiff did not file his initial claim in proper form.  Therefore, it would be an injustice to the class to allow the plaintiff to represent the class.  Because the plaintiff cannot adequately represent Hartwell or the class, those claims should be dismissed.

### *Scope of 42 U.S.C. § 1983*

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove:  (1) objectively, the deprivation of a

7

basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Lewis v. Casey*, the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. 518 U.S. 343, 349 (1996). A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). In *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993), the Fourth Circuit addressed whether or not there exists a requirement on "local jails" to even provide a "law library," and the court found that "'[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *Id.* at 1383 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The court continued and found:

> A local facility need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility.

*Strickler*, 989 F.2d at 1386. The Fourth Circuit Court of Appeals has ruled that the Constitution does not require that every local jail facility have a law library. *Magee v. Waters*, 810 F.2d 451, 452-53 (4th Cir. 1987).

This court agrees with the defendants that the plaintiff has failed to establish a claim that rises to the level of a constitutional deprivation with regard to his claims that the defendants provided him with cold food, deprived him of access to the courts, lacked proper recreational opportunities, and housed him in overcrowded conditions.  The plaintiff was put in maximum security because he masturbated in front of female officers  (Murphy aff. ¶ 4).  Once in maximum security, the plaintiff threw food at an officer, which resulted in the plaintiff being provided with bag lunches (Thomas aff. ¶ 4).  In addition, the plaintiff's recreational opportunities were taken away because he threatened an officer (*id*. ex. 2).  The plaintiff has not identified a specific problem he wished to research nor has he stated a specific injury resulting from his alleged denial of access to the courts.  Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  Further, the plaintiff failed to provide evidence of the detention center being overcrowded.  Based on the above, the plaintiff failed to establish a claim that rises to the level of a constitutional deprivation.  Accordingly, summary judgment should be granted.

***Qualified Immunity***

The defendants further claim that they are entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied. Any remaining pending motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district court adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

July 23, 2007

Greenville, South Carolina